STATE of North Dakota, Plaintiff
and Appellant,

v.

Patricia LaMORIE, Defendant
and Appellee.

Criminal No. 960057.

Supreme Court of North Dakota.

Dec. 20, 1996.

Bruce A. Romanick (argued), Assistant State's Attorney, Bismarck, for plaintiff and appellant.

Wayne D. Goter (argued), of Wheeler Wolf, Bismarck, for defendant and appellee.

MESCHKE, Justice.

The State appeals from an order suppressing evidence. We reverse, holding that the court improperly considered evidence outside the record in deciding that a search warrant was invalid, and that the magistrate's determination of probable cause to search had a substantial basis.

On April 13, 1995, the post office and convenience store in Arena was burglarized and burned to the ground. Items stolen

included blank postal money orders and a machine to validate money orders. Federal postal inspectors and the Burleigh County Sheriff's office investigated the crime.

On May 3, 1995, Deputy Steven Hall applied for a warrant to search a mobile home in Wing owned by Patricia LaMorie. Hall testified that several suspects had been passing money orders stolen from the Arena post office, using New York identification. Investigation had revealed that the people passing the stolen money orders fit the description of five people who had recently moved to Wing from New York: Patricia and Lawrence LaMorie, Jerry and Vicki Allen, and Patricia LaMorie's ex-husband Jeffrey Royce. All five were residing in LaMorie's home in Wing. Hall testified that a person, who was positively identified as Royce, had cashed one of the stolen money orders in Wing on April 22.

Hall also testified that the Allens had been arrested on drug charges in West Fargo on May 2, and stolen money orders from the Arena post office were found in their possession. The Allens, in statements to West Fargo police, implicated themselves and Royce in the burglary and in the on-going scheme to cash the stolen money orders. According to Hall, he had spoken to Vicki Allen by telephone that morning, and she told him the property stolen in the Arena burglary had been taken to LaMorie's mobile home in Wing. She informed Hall that the validation machine for postal money orders had been set up in the kitchen of LaMorie's home and that they had processed about $26,000 worth of postal money orders there. Vicki Allen described to Hall particular items stolen in the Arena burglary that could be found in the mobile home.

The magistrate issued a search warrant for LaMorie's home, and officers conducted the search on May 4, 1995. Patricia LaMorie left the home shortly before officers began the search. Deputies stopped her in downtown Wing and told her they would be searching the residence. She agreed to accompany them to a nearby fire station to answer some questions. During questioning, LaMorie asked about North Dakota's marijuana laws and volunteered that she had a small amount of marijuana in the residence. After the questioning finished, LaMorie returned to her home, where the search was still in progress. She was arrested when she became unruly and put her hands through a glass window.

During the search of LaMorie's home, officers found marijuana, marijuana plants, equipment for growing marijuana, and illegal firearms. They also found packaged jewelry that matched the description of jewelry stolen in the Arena burglary.

LaMorie was charged with possession of illegal firearms,[1] obstruction of a governmental function, and manufacture and possession of controlled substances. LaMorie moved to suppress the evidence from the search and her statements to police. After a suppression hearing, LaMorie's attorney sent the trial court a document labeled "Supplement to Brief in Support of Defendant's Motion to Suppress Evidence" that included a copy of a federal magistrate's "Report and Recommendation" in the related federal prosecution. The federal magistrate recommended suppression of all evidence and statements, based in part upon his conclusion that Vicki Allen's prior felony conviction had not been disclosed to the magistrate who issued the warrant.[2] Relying upon facts mentioned in the federal magistrate's Report and Recommendation, this trial court concluded that the officers had knowledge of Vicki Allen's prior felony conviction but failed to disclose that information to the magistrate, thereby invalidating the warrant. The court suppressed the evidence seized with the warrant and also suppressed LaMorie's statements to officers at the Wing fire station as fruit of the poisonous tree. The State appealed.

---

1.· The firearms charge was later dropped. LaMorie has been charged in federal court with possession of an illegal firearm. *See United States v. LaMorie,* 100 F.3d 547 (8th Cir.1996).

2. The federal district court agreed with the magistrate and suppressed the relevant evidence in the federal prosecution. The Court of Appeals reversed, upholding the validity of the warrant. *United States v. LaMorie,* 100 F.3d at 551–52.

■ Although we ordinarily analyze the validity of a search warrant independently of the trial court's decision by reviewing the sufficiency of the information before the magistrate, *i.e., State v. Woehlhoff,* 540 N.W.2d 162, 165 (N.D.1995), in this case the trial court's decision merits discussion. The court's conclusion that the warrant was invalid was based upon its finding that the officer seeking the warrant knew about Vicki Allen's prior felony conviction and failed to disclose it to the issuing magistrate. There was no evidence at the suppression hearing about her prior felony conviction or any officer's knowledge of it. The only basis for the trial court's finding was the copy of the federal magistrate's Report and Recommendation that had been sent to the court after the hearing.[3]

■ A trial court must decide factual matters only upon the evidentiary record of testimony and exhibits in that court. *·See Thorlaksen v. Thorlaksen,* 453 N.W.2d 770, 773 (N.D.1990); *Hultberg v. Hultberg,* 259 N.W.2d 41, 45 (N.D.1977). As we explained in *Wood v. Krenz,* 392 N.W.2d 395, 398 (N.D. 1986):

> One of the fundamental precepts of our judicial system is that the finder of fact must rely only on the evidence presented in court. We have developed comprehensive rules regulating procedures and admissibility of evidence, all concerned with ensuring that trials are conducted fairly and that evidence submitted meets threshold indicia of reliability. These fundamental principles are ignored when a finder of fact goes outside the record....

In this case, the trial court relied upon factual assertions in an unauthenticated document furnished to the court by one of the parties weeks after the hearing. There was no attempt to reopen the record and admit this "evidence" into the record. The trial court erred in considering the federal magistrate's report and in suppressing evidence by using factual assertions in that report.

LaMorie asserts that, even without considering this improper "evidence," the remainder of the record demonstrates that the warrant was invalid and the evidence should be suppressed. LaMorie argues that the warrant was invalid because the information before the issuing magistrate did not specify the date of the Arena burglary. LaMorie thus asserts there was no probable cause to believe the items would be found in the home when the warrant was issued.

The standards governing review of a search warrant's validity were set out in *State v. Rydberg,* 519 N.W.2d 306, 308 (N.D. 1994) (citations omitted):

> A trial court reviewing the validity of a search warrant decides if the information before the magistrate established probable cause to search....
>
> > "Probable cause to search does not require the same standard of proof necessary to establish guilt at trial; rather, probable cause to search exists if it is established that certain identifiable objects are probably connected with criminal activity and are probably to be found at the present time at an identifiable place."

*State v. Ringquist,* 433 N.W.2d 207, 212 (N.D.1988). The task of the issuing magistrate is to make a practical, commonsense decision whether, given all the information considered together, there is a fair probability contraband or evidence of a crime will be found in a particular place.... The question is one of law. On appeal, we use the totality-of-the-circumstances test to review the sufficiency of the information before the magistrate independent of the trial court's decision.... "We give deference to a magistrate's factual findings in determining whether probable cause exists. If there is a substantial basis for the magistrate's conclusion that probable cause exists, we will not disturb that conclusion on appeal." *[State v.] Frohlich* [, 506 N.W.2d 729, 732 (N.D.1993) ] (citations omitted).

---

3. The federal magistrate's Report and Recommendation, although indicating that Vicki Allen was a convicted felon, contains no indication that these law enforcement officers knew about that conviction when they sought the search warrant. *See also United States v. LaMorie,* 100 F.3d at 555.

LaMorie correctly points out Deputy Hall failed to inform the magistrate of the date of the Arena burglary. Other dates, however, were given in the record. Hall testified Royce had passed a stolen money order in Wing on April 22, and that Vicki and Jerry Allen were arrested on May 2 with stolen money orders from the Arena burglary in their possession. Hall also testified that someone began cashing the stolen postal money orders "shortly after the burglary," and that the Allens had implicated themselves in an "ongoing scheme to pass the stolen money orders."

The evidence submitted to the magistrate clearly demonstrated a continuing course of conduct from the original burglary until the day before the application for the warrant. Hall's testimony demonstrated that the illegal cashing of stolen money orders began soon after the burglary, Royce had cashed a stolen money order in Wing on April 22, and the Allens had stolen money orders in their possession on May 2. When the evidence sought in a warrant stems from continuous, protracted criminal activity, specific times and dates become less important. *State v. Ringquist*, 433 N.W.2d 207, 213–214 (N.D.1988); *State v. Mondo*, 325 N.W.2d 201, 204 (N.D.1982); *United States v. LaMorie*, 100 F.3d 547, 554 (8th Cir.1996); 2 LaFave, Search and Seizure § 3.7(a) (1996). As we explained in *State v. Johnson*, 531 N.W.2d 275, 278 (N.D.1995) (citations omitted):

> Probable cause is not determined by merely counting the number of days between the time of the facts relied upon and the warrant's issuance.... Whether there is probable cause to search depends on the facts and circumstances of each case.... Where the affidavit recites facts indicating a course of conduct or activity of a protracted and continuous nature, the passage of time may be unimportant to the validity of the probable cause.... The proper inquiry is whether the magistrate, taking into consideration the nature of the crime, the nature of the criminal, the nature of the thing to be seized, and the nature of the place to be searched could reasonably believe that evidence of a criminal violation was probably at the specified location.

In this case, Deputy Hall's failure to inform the magistrate of the date of the Arena burglary was not fatal to the warrant. The magistrate was informed that the stolen money orders and validation machine had been transported to LaMorie's mobile home, the machine had been set up in the kitchen, and the money orders had been processed there. The evidence before the issuing magistrate demonstrated that stolen money orders from the Arena burglary had been cashed shortly after the burglary and as recently as April 22, and the Allens had stolen money orders in their possession when arrested on May 2. Because the evidence demonstrated a continuing course of criminal conduct until the day before the warrant was sought, the magistrate could reasonably conclude that evidence of crime would probably be found at the LaMorie trailer. *See United States v. LaMorie*, 100 F.3d at 552 (concluding on these same facts that evidence for the warrant was not stale and the warrant was valid). Considering the totality of the circumstances, we conclude the magistrate's decision that probable cause to search existed had a substantial basis.

The trial court also suppressed LaMorie's statements to law enforcement officers as fruit of the poisonous tree. The sole basis for this ruling was the court's conclusion that the statements were obtained as a result of execution of an invalid search warrant. Because we conclude the search warrant was valid, we also reverse the order suppressing LaMorie's statements.

We find it unnecessary to address the rest of the arguments by the parties. We reverse the order suppressing evidence and remand for trial.

VANDE WALLE, C.J., ERICKSTAD, Surrogate Judge, and MARING and NEUMANN, JJ., concur.

ERICKSTAD, Surrogate Judge, sitting in place of SANDSTROM, J., disqualified.