THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MICHAEL S. HANSEN, Defendant-Appellee.

Fourth District   No. 4—00—1091

Opinion filed December 24, 2001.

Thomas J. Brown, State's Attorney, of Pontiac (Norbert J. Goetten, Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Brian M. Gabor, of Satter, Beyer & Bertram, of Pontiac, for appellee.

JUSTICE COOK delivered the opinion of the court:

The State appeals from the December 5, 2000, ruling of the Livingston County circuit court, which granted defendant Michael Hansen's motion to quash arrest and suppress evidence. We reverse and remand for further proceedings.

## I. BACKGROUND

On November 5, 1999, the Illinois State Police stopped an Oldsmobile for speeding. There were four males and a large dog in the Oldsmobile. The driver and defendant Hansen were in the front and the two other males were in the backseat with the large dog in between them. Two troopers were in the police car. Officer Hoop, the driver of the police car, was new to the force and was still in his probationary period. Officer Harris was riding along to supervise Officer Hoop.

When the Oldsmobile pulled over to the side of the road, Officer Hoop activated the takedown lights on his patrol car to illuminate the interior of the Oldsmobile. As the Oldsmobile stopped, Officer Harris noticed the front seat passenger, Hansen (defendant), making furtive movements as though he were placing or retrieving something from under his seat. Officer Harris warned Officer Hoop to be careful because the front seat passenger had made the furtive movements and may be reaching for a weapon.

As Officer Hoop approached the driver's side window of the Olds-

mobile, he noticed the strong smell of burning cannabis emanating from the vehicle. Officer Hoop proceeded to ask the driver for his license and registration. While Officer Hoop was talking to the driver, Officer Harris approached the passenger side of the Oldsmobile and also smelled the strong odor of burning cannabis. Hansen rolled his window down, thinking the officer wanted to talk to him, at which point Officer Harris told Hansen to place his hands on the dashboard. Hansen complied. Officer Harris shined his flashlight into the car onto the floorboard underneath Hansen and saw a green leafy substance on the floorboard that the officer believed to be cannabis. Officer Harris then ordered Hansen to get out of the car.

With Hansen out of the car, Officer Harris searched the floorboard and under the seat in which Hansen had been sitting. Finding nothing, Officer Harris then ordered Hansen to place his hands on the car and frisked Hansen. During the frisk, Officer Harris felt something hard in defendant's front right pocket which he could not identify. When Hansen would not tell Officer Harris what was in his pocket, Officer Harris reached into defendant's pocket and retrieved two glass smoking bowls. Officer Harris reached into defendant's pocket again and retrieved a bag which was later confirmed to contain cannabis.

Officer Harris handcuffed and read Hansen his *Miranda* rights (*Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966)) after he found the smoking bowls and bag of suspected cannabis. Both officers searched the car and all of the other persons in the car. No controlled substances were found in the car or on any other persons in the car. The driver and other passengers and the dog were allowed to leave, and Hansen was placed in the police car. The suspected cannabis on the floor of the car was left in the car and not tested and it is unknown what the substance actually was. While being transported in the police car, Hansen volunteered that he had "smoked three bowls."

Hansen and the other passengers denied anyone smoked cannabis in the Oldsmobile that night and denied that there was any odor of burnt cannabis in the car. According to testimony, neither Officer Hoop nor Officer Harris put any mention of an odor of burning cannabis in their police reports and did not question any of the passengers in the car about the odor until after all searches had been conducted.

Hansen was charged with possession of drug paraphernalia, a Class A misdemeanor, and unlawful possession of cannabis, a Class B misdemeanor. 720 ILCS 600/3.5(a) (West 1998); 720 ILCS 550/4(b) (West 1998). Hansen filed a motion to quash arrest and suppress evidence, claiming that Officer Harris did not have probable cause to search Hansen's person and therefore the cannabis, smoking bowls,

and any statements made after the illegal search were tainted and inadmissible. The trial court granted Hansen's motion, finding that Officer Harris did not have probable cause to search Hansen's person.

In making its ruling, the trial court walked through the various stages of the interaction between Hansen and the Illinois State Police officers, explaining its analysis and conclusions at each step. As a preliminary matter, all parties conceded that the initial stop of the Olds-mobile for speeding was proper. The trial court also found that Officer Harris was allowed to ask Hansen to get out of the car and frisk him for weapons, based on the furtive movements, under *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). Officer Harris exceeded the authority of a *Terry* frisk, however, when he reached into Hansen's pocket. Officer Harris found nothing under Hansen's seat and never believed the object in Hansen's pocket was a weapon; therefore, he was not allowed to retrieve the object anyway.

The trial court next considered whether the search could be justified as a search incident to arrest. The trial court noted that a search incident to arrest can occur prior to the actual arrest if probable cause to make the arrest existed before the search was made. Therefore, the fact that Hansen was not handcuffed and given *Miranda* rights until after the search was not dispositive of the issue. The trial court also noted that the odor of burnt cannabis emanating from the vehicle gave Officers Hoop and Harris probable cause to search the Oldsmobile, the driver, and any containers found in the car. The trial court found no probable cause to search Hansen's person, however, because passengers have a higher expectation of privacy in their persons.

## II. ANALYSIS

■ A trial court's ruling on a motion to suppress can only be overturned if it is against the manifest weight of the evidence. *People v. Boyd*, 298 Ill. App. 3d 1118, 1122-23, 700 N.E.2d 444, 447 (1998), *appeal denied*, 182 Ill. 2d 554, 707 N.E.2d 1241 (1999). The trial court's findings of fact will not be reversed unless they are manifestly erroneous. *People v. Gonzalez*, 184 Ill. 2d 402, 411, 704 N.E.2d 375, 379 (1998), *cert. denied*, 528 U.S. 825, 145 L. Ed. 2d 63, 120 S. Ct. 75 (1999). If the trial court's findings of fact are not manifestly erroneous, then our review of matters of law is *de novo*. *Gonzalez*, 184 Ill. 2d at 412, 704 N.E.2d at 380.

The trial court made a factual determination in favor of the officers' version of events. It found that Officers Hoop and Harris were qualified to determine the odor of burning cannabis and to recognize cannabis leaves and that they did in fact smell burning cannabis coming from the Oldsmobile. It is unclear whether the trial court found

that the green leafy substance was cannabis or not, but the trial court did accept as true Officer Harris' testimony that he believed it to be cannabis. The trial court also believed Hansen told the officers that he had smoked three bowls prior to being stopped.

Hansen argues on appeal that these findings are suspect because the officers did not mention any odor of burnt cannabis in their police reports and the passengers in the Oldsmobile testified that no one was smoking cannabis in the car on the night in question. Hansen also argues that, with no tests made on the green leafy substance, there is no basis to assume it was cannabis. As for Hansen's statement that he had smoked three bowls, Hansen claimed he actually meant he had smoked three bowls the day before.

■ The trial court is in a better position to determine the credibility of the witnesses, and it resolved the disputed testimony in favor of the officers' version of events. Also, the officers were trained to detect the odor of burning cannabis, Hansen did have cannabis and smoking bowls on his person, and Hansen admits he told the officers that he had smoked three bowls before being stopped, although he claims he meant the day before. The manifest weight of the evidence supports the trial court's finding that the officers smelled the odor of burning cannabis coming from the Oldsmobile.

The trial court found that, as a matter of law, the search of Hansen's pockets exceeded the scope of a *Terry* frisk. The State concedes this point on appeal.

The trial court also found, as a matter of law, that the odor of burnt cannabis gave Officer Harris probable cause to search the Oldsmobile and the driver (*People v. Strong*, 215 Ill. App. 3d 484, 490, 574 N.E.2d 1271, 1275 (1991)) and probable cause to search any containers in the car that belonged to Hansen (*Wyoming v. Houghton*, 526 U.S. 295, 143 L. Ed. 2d 408, 119 S. Ct. 1297 (1999)). The trial court also found that if probable cause to arrest and search Hansen existed before the search was conducted, then the search could be upheld as a valid search incident to arrest. *People v. Miller*, 212 Ill. App. 3d 195, 200, 570 N.E.2d 1202, 1206 (1991). The trial court found that probable cause to arrest and search Hansen did not exist before the search, however, because, under the holdings of the United States Supreme Court in *United States v. Di Re*, 332 U.S. 581, 92 L. Ed. 210, 68 S. Ct. 222 (1948), and *Houghton*, a passenger has a heightened privacy expectation in his "person," which is entirely different from the privacy expectation in containers, and the passenger's person cannot be searched just because the driver, the vehicle, and passengers' containers can be searched.

■ The State claims that the trial court's ruling was erroneous as

a matter of law because, under our decision in *Boyd*, 298 Ill. App. 3d at 1122, 700 N.E.2d at 447, the odor of burning cannabis emanating from a lawfully stopped vehicle gives the police probable cause to search all passengers' persons within the enclosed space of a vehicle. We agree.

In *Boyd*, the police lawfully stopped a vehicle and ordered the passengers to remain in the car. When the police approached the car, they detected the strong odor of burnt cannabis emanating from the vehicle. The police then ordered a passenger to exit the vehicle, searched him, and found cocaine on the passenger's person. This court held:

> "[T]he officers' detection of the odor of burning cannabis emanating from the lawfully stopped [vehicle] provided the officers with probable cause to search defendant, who was a passenger in the car. To hold otherwise would lead to the illogical conclusion that when a trained police officer detects the odor of a burning controlled substance emanating from a lawfully stopped vehicle he can search only the driver and not the other occupants of the car even though the smell was emanating from the enclosed space of the vehicle in which *all* occupants were present." (Emphasis in original.) *Boyd*, 298 Ill. App. 3d at 1127, 700 N.E.2d at 450.

*Cf. People v. Fondia*, 317 Ill. App. 3d 966, 970, 740 N.E.2d 839, 842 (2000) (when dogs smell presence of drugs, individualized suspicion of a particular occupant is still required).

■ Under the holding in *Boyd*, it is clear that when a trained police officer smells burnt cannabis emanating from a lawfully stopped vehicle, that officer may search the persons of all passengers who were in the enclosed space of the vehicle. Therefore, when Officer Harris smelled burning cannabis emanating from the Oldsmobile, he had probable cause to search everyone in the Oldsmobile, including Hansen, making the search legal.

At this point, we note that the sole saving grace that made Officer Harris' search of Hansen legal was the fact that the officers smelled the odor of burning cannabis emanating from the Oldsmobile. This makes the fact that neither of the officers mentioned anything about an odor of cannabis in their police reports significant. Police reports are relied upon by defendants in preparing their defense and it could be prejudicial to a defendant if an officer's testimony at a hearing or trial suddenly added a pivotal fact not present in the police report that changes the entire nature of the case. We should be careful not to allow the subjective claim of an odor of burning cannabis, made after the fact, to become a way to justify searching all passengers within the enclosed space of any vehicle as a matter of course.

### III. CONCLUSION

The trial court's judgment that probable cause did not exist to

search Hansen was erroneous as a matter of law. We reverse the trial court's judgment granting Hansen's motion to suppress and remand for further proceedings consistent with views expressed herein.

Reversed and remanded.

McCULLOUGH, P.J., and MYERSCOUGH, J., concur.